UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AIDAN O'BRIEN,

    Plaintiff,

  v.

THE CITY OF CHICAGO, et al.,

    Defendants.

No. 20 CV 2260

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Aidan O'Brien double-parked his car, and defendants—police officers Marcus Brown and Jason Davis—told O'Brien to move. They asked him for his driver's license and proof of insurance. O'Brien didn't comply. The officers ordered O'Brien out of the car, but O'Brien stayed put and resisted their attempts to remove him even after Brown and Davis said that he was under arrest. O'Brien held onto the steering wheel, preventing officers from handcuffing him. Brown and Davis eventually pulled O'Brien out of the car, but in the process they injured O'Brien's hand. Plaintiff sues the arresting officers for excessive force and false arrest, among other claims. Defendants move for summary judgment. For the reasons explained below, the motion is granted.

**I.    Legal Standards**

    Summary judgment is appropriate when the movants show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists

if the evidence is such that a jury could return a verdict for the nonmoving party. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). I construe all facts and draw all inferences in favor of plaintiff, the nonmoving party. *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). I need only consider the cited materials, but I may consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

## II.  Facts

On the evening of August 29, 2019, Chicago police officers Marcus Brown and Jason Davis were driving a marked police car in the city's Hyde Park neighborhood. [90] ¶¶ 1, 4–5.[1] They were on Harper Court, a narrow street (there were cars parked on both sides, with room enough in between for one car to pass at a time) with several restaurants. *Id.* ¶¶ 4, 6. Aidan O'Brien's dark sport utility vehicle was parked in the

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from defendants' joint Local Rule 56.1 statement, [90], and from bodycam footage filed along with defendants' motion. *See* [92]; [93]; *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) (citation omitted) ("When video footage firmly settles a factual issue, there is no genuine dispute about it."). Plaintiff failed to comply with the Local Rule in three ways. First, O'Brien didn't adequately respond to defendants' statement. *See* [97] at 6–7; N.D. Ill. Local R. 56.1(e). That means that defendants' asserted facts are admitted. *See* N.D. Ill. Local R. 56.1(e); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citations omitted). Second, plaintiff failed to file a separate statement of additional facts, and instead included statements of fact in his response brief. *See* [97] at 7–10; *Shaffer v. American Med. Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011) (quoting *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005)). Third, O'Brien's additional facts aren't properly supported, because they do not rely on citations to specific evidentiary material. *See* [97] at 7–10; N.D. Ill. Local R. 56.1(d)(2). I ignore plaintiff's improper statement of facts, but nonetheless consider "other materials in the record," including the bodycam footage of the events at issue. *See* Fed. R. Civ. P. 56(c)(3); *Horton*, 883 F.3d at 944.

center lane without a driver, obstructing the flow of traffic. *See id.* ¶¶ 7–9. O'Brien was outside of the vehicle. *See id.* ¶ 9.

Brown and Davis told O'Brien to move his car. [90] ¶ 8. O'Brien and another person got into the SUV, with O'Brien in the driver's seat. *See id.* ¶ 9. O'Brien drove the car a few feet, and then stopped, still blocking traffic. *Id.* ¶¶ 9–10. Brown and Davis activated the emergency lights on their police car, and approached O'Brien's vehicle. *See id.* ¶¶ 11, 13. With their body-worn cameras activated, Davis came to the driver's side of the SUV, while Brown walked to the passenger side. *Id.* ¶¶ 13–14.

Davis again told O'Brien to move his car. [90] ¶ 15. O'Brien refused, and said that he was looking for a parking spot. *Id.* Davis repeatedly asked O'Brien if he had a driver's license and insurance, and O'Brien eventually said that he did have those documents. *Id.* ¶ 16. Davis told O'Brien to hand over his papers, but O'Brien instead asked "Why?" *Id.* ¶ 17. Davis and Brown repeatedly told O'Brien to give them his papers and to exit the car, but O'Brien refused to do either of those things. *Id.* ¶¶ 18–20.

Davis told O'Brien that he was under arrest. [90] ¶ 21. With O'Brien still refusing to move, the officers attempted to physically remove him from the car, but O'Brien resisted for about seven minutes. *Id.* ¶¶ 22–25. O'Brien grabbed the steering wheel of his car, stiffened his arms, and pulled away from the officers. *Id.* ¶¶ 26–28. O'Brien continually asked why he was being arrested and said that he hadn't done anything wrong. *See* [93] Ex. F. at 0:00–5:00. The officers didn't answer O'Brien's questions, and instead insisted that he hand over his documents and exit the car. *See*

3

*id.* Davis and Brown tried to handcuff O'Brien by pulling and twisting O'Brien's arm outside the car, but they initially were only able to get one handcuff secured to O'Brien's left wrist. *Id.* ¶¶ 29–30; [93] Ex. F. at 1:30–9:00. At some point during the struggle, O'Brien's thumb was broken. [90] ¶¶ 68–69.

Davis called for backup. [90] ¶ 31. After that radio call was made and while the officers were attempting to handcuff O'Brien's right wrist, O'Brien began to reach his right hand toward the center of the vehicle. *Id.* ¶ 32; *see* [93] Ex. F at 3:00–4:30. The officers lost sight of O'Brien's hand. *Id.* ¶ 33. Believing that they were in danger because O'Brien was reaching for a weapon, Davis and Brown ordered O'Brien to stop reaching. *Id.* ¶¶ 34–35. The officers drew their guns and pointed them at O'Brien, keeping the weapons drawn for some sixty seconds. *See id.* ¶¶ 36, 39; [93] Ex. F at 3:30–4:30. Davis warned O'Brien not to reach and said, "I will blow your fucking head off." [93] Ex. F at 3:30–3:40. Davis ordered O'Brien to put his hands on the wheel, O'Brien complied, and the officers holstered their weapons. [90] ¶¶ 37–38. Around this point, O'Brien's passenger exited the car. *See* [93] Ex. F. at 3:00–5:00.

It didn't end there. Brown and Davis again tried to handcuff O'Brien, who continued to resist. [90] ¶¶ 40–41. Eventually, Brown and Davis handcuffed O'Brien with both arms in front of his body. *Id.* ¶ 42. Brown then held O'Brien's hand to prevent him from reaching for anything. *Id.* ¶ 43. Davis and Brown again asked or ordered O'Brien to step out of the car. *Id.* ¶ 44. Plaintiff didn't comply. *Id.* ¶ 45. Another officer—Michael Shrake—arrived on scene, and ordered Davis and Brown to remove O'Brien from the vehicle. *Id.* ¶¶ 1, 46–47. Davis and Brown pulled O'Brien—

4

who had been sitting in the driver's seat—out of the car through the front passenger door. *Id.* ¶ 48.

Officers placed O'Brien on the ground outside of the car. [90] ¶ 49. They then removed the handcuffs from in front of his body and re-handcuffed O'Brien behind his back. *Id.* ¶ 50. Even while on the ground, however, O'Brien continued to resist the officers. [90] ¶ 51; *see* [93] Ex. F at 9:00–11:00. Shrake threatened to tase O'Brien if he continued to resist. [90] ¶ 52; *see* [93] Ex. F at 9:00–11:00.

Because O'Brien's thumb had been broken, following his arrest, officers took him to a hospital for treatment. [90] ¶ 71. O'Brien was eventually charged with four counts of resisting and obstructing a police officer. *Id.* ¶¶ 54–55. He was also issued five tickets: for possession of cannabis, parking in a non-business district, failing to comply with police directives, failing to produce a driver's license, and failing to produce proof of insurance. *Id.* ¶ 56. After no witnesses testified against him, O'Brien's criminal case and traffic tickets were stricken with leaven to reinstate, and a prosecutor dropped the cannabis charge. *Id.* ¶¶ 57–58.

III. Analysis

    A.    **False Arrest**

To succeed on a claim for false arrest, O'Brien must prove that he was arrested without probable cause. *See Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022) (citing *Gaddis v. DeMattei*, 30 F.4th 625, 630 (7th Cir. 2022)) (discussing the Fourth Amendment standard); *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 626 (7th Cir. 2010) (citations omitted) (noting that probable cause bars a false arrest

5

claim under Illinois law); *Meerbrey v. Marshall Field & Co., Inc.*, 139 Ill.2d 455, 474 (1990) (citations omitted) (finding that under Illinois law a false arrest claim requires a showing that a person was unreasonably restrained). If officers Brown, Davis, and Shrake had probable cause to arrest O'Brien, they cannot be held liable under a false arrest theory. *See Farnik v. City of Chicago*, 1 F.4th 535, 545 (7th Cir. 2021) (quoting *Muhammad v. Pearson*, 900 F.3d 898, 907 (7th Cir. 2018)); *Stokes*, 599 F.3d at 626. Probable cause existed "if the totality of the facts and circumstances known to the [officers] at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cnty., Illinois*, 705 F.3d 706, 714 (7th Cir. 2013) (citations omitted). A court considers whether probable cause existed from an objective point of view (the officers' state of mind and beliefs are irrelevant), looking to what the officers knew at the time of the arrest. *See Johnson*, 53 F.4th at 1068 (quoting *Abbott*, 705 F.3d at 714 and *Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012)).

When Davis and Brown activated their emergency lights and approached O'Brien's vehicle, *see* [90] ¶¶ 7–14, they had reasonable suspicion that O'Brien was committing a traffic offense. *See Navarette v. California*, 572 U.S. 393, 402 (2014) (noting that reasonable suspicion of criminal activity depends on the facts and practical considerations of everyday life); *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996). It's undisputed that O'Brien twice parked his car in the center lane of traffic on a narrow street, blocking other vehicles. *See* [90] ¶¶ 4, 6–10. Under

6

Illinois law, it's illegal to park a car "[o]n the roadway side of any vehicle stopped or parked at the edge or curb of a street." 625 ILCS 5/11-1303(a)(1)(a); *Goodpaster v. Belcheyk*, NO 11-CV-8442, 2013 WL 1103852, at *4 (N.D. Ill. Mar. 14, 2013).[2]

Later, when Davis told O'Brien he was under arrest, *see* [90] ¶ 21, reasonable officers in defendants' position would have had probable cause to arrest O'Brien for at least two additional offenses. Illinois law requires drivers to have a license and proof of insurance, and to display those documents to police officers on request. *See* 625 ILCS 5/6-112; *People v. Profit*, 2021 IL App (2d) 200350-U ¶ 72; *Lanigan v. Vill. of East Hazel Crest, Illinois*, 110 F.3d 467, 474 (7th Cir. 1997); 625 ILCS 5/3-707(b); *Williams v. Vaszquez*, 62 Fed. App'x 686, 690 (7th Cir. 2003); *People v. O'Brien*, 197 Ill.2d 88, 89 (2001). Brown and Davis repeatedly asked O'Brien for his license and proof of insurance, but O'Brien angrily refused to comply. *See* [90] ¶¶ 16–20. Based on that refusal, there was reason to believe that O'Brien was violating Illinois law. *See Abbott*, 705 F.3d at 714; *Lanigan*, 110 F.3d at 474. Once Davis told O'Brien that he was under arrest, O'Brien's physical resistance added to the probable cause for the arrest. *See Abbott*, 705 F.3d at 720 (discussing 720 ILCS 5/31-1(a)).[3]

---

[2] Defendants argue that they had probable cause to arrest O'Brien for a related offense: violating Illinois's prohibition on blocking a roadway. *See* 625 ILCS 5/11-1301(a). But that law doesn't apply to business or residential districts. *See Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007) (citing *People v. Glisson*, 359 Ill.App.3d 962, 973 (5th Dist. 2005)); *see also Duncan v. Fisher*, 101 Ill.App.2d 213, 216 (3d Dist. 1968) (noting that the predecessor statute is aimed at rural localities and "does not apply in a city").

[3] It's not necessary to decide when, precisely, O'Brien was seized for purposes of the Fourth Amendment. *See Brooks v. City of Aurora, Illinois*, 653 F.3d 478, 484–85 (7th Cir. 2011). The officers in this case attempted to seize O'Brien when they began trying to place him in handcuffs, but O'Brien's actual seizure didn't occur until after he stopped evading detention. *See id.* (citing *Acevedo v. Canterbury*, 457 F.3d 721, 725 (7th Cir. 2006) and *California v.*

O'Brien argues that there's a dispute as to whether or when the officers had probable cause to arrest him (without explaining what, exactly, is disputed), and that the question is best left to a jury. *See* [97] at 21. A jury usually decides whether an arrest was supported by probable cause. *See Abbott*, 705 F.3d at 714 (citing *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008)). But when the underlying facts are undisputed—as here, when the basis for probable cause was caught on video—the court can decide the question. *See id.*; *Cibulka v. City of Madison*, 992 F.3d 633, 639 n.2 (7th Cir. 2021) (citation omitted). That officers initially told O'Brien that he could drive away, *see* [90] ¶¶ 8, 15, doesn't change the analysis. O'Brien's apparent freedom to go during the early stages of the encounter suggests that he wasn't seized at that point, *see Hall v. City of Chicago*, 953 F.3d 945, 951 (7th Cir. 2020) (quoting *United States v. Lopez*, 907 F.3d 472, 487 (7th Cir. 2018)), but that doesn't mean officers lacked probable cause for a subsequent arrest. Similarly, it doesn't matter that officers never told O'Brien why he was being arrested or that O'Brien wasn't ultimately convicted of any offense. *See Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022) (citation omitted) (noting that probable cause is assessed at the time of the arrest); *Abbott v. Sangamon Cnty., Illinois*, 705 F.3d 706, 715 (7th Cir. 2013) (citations omitted) (finding that an officer's subjective beliefs about which crime an arrestee had committed are immaterial "because an arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief

---

*Hodari D.*, 499 U.S. 621 (1991)). What matters here is that O'Brien was seized at some point after officers told him he was under arrest, and that by then officers had probable cause to arrest based on O'Brien's failure to hand over his papers.

8

as to which crime was at issue"); *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998) ("The fact that Kelley was not actually convicted of trespass does not mean that there was not probable cause for her arrest.").

Defendants knew that O'Brien had repeatedly failed to turn over his license and proof of insurance and was actively resisting arrest. Based on that, it was reasonable to believe that O'Brien was committing a crime. No jury could find that these officers lacked probable cause to arrest O'Brien, which means they didn't violate his rights through a false arrest.

### B. Excessive Force

O'Brien argues that Shrake, Davis, and Brown used excessive force in two ways: threatening him with their weapons and pulling O'Brien out of his car, breaking his thumb. *See* [97] at 13–17.

Arresting officers violate the Fourth Amendment's prohibition on unreasonable seizures when they use excessive force. *See Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The standard is objective, viewed from the perspective of "a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Shirley v. Rabensteine*, No. 22-2147, 2023 WL 129432, at *2 (7th Cir. Jan. 9, 2023) (quoting *Graham*, 490 U.S. at 396). Whether a given use of force is excessive requires a fact-intensive inquiry into all of the circumstances, including the severity of the crime, potential threats to the safety of the officers or bystanders, and whether the plaintiff was actively resisting arrest. *Id.* (citing *Turner v. City of Champaign*, 979 F.3d 563, 567 (7th Cir. 2020)).

9

Force is excessive when it is greater than "reasonably necessary to make an arrest." *Day v. Wooten*, 947 F.3d 453, 460–61 (7th Cir. 2020).

In this case, Davis and Brown drew their weapons on O'Brien after he refused to turn over his papers and had been physically resisting their attempts to arrest him. *See* [90] ¶¶ 16–30, 36. During the struggle to remove O'Brien from the car, the officers lost sight of O'Brien's right hand as he leaned towards the center of the vehicle, and both Davis and Brown yelled at O'Brien to stop reaching. *See id.* ¶¶ 32–35; [93] Ex. F at 3:00–4:30. The officers then pointed their guns at O'Brien, and warned him not to reach. [90] ¶¶ 36–39. Davis said that he would shoot O'Brien in the head, and the officers kept their weapons pointed at O'Brien for about sixty seconds. *See id.* ¶ 39; [93] Ex. F at 3:00–4:30.

O'Brien was initially stopped and then arrested based on suspected, minor traffic offenses. But by the time officers pointed their guns at him, he was also resisting arrest, a more serious crime. *See Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016); *Brooks v. City of Aurora, Illinois*, 653 F.3d 478, 486–87 (7th Cir. 2011) (gathering cases involving force used against those resisting arrest). It's reasonable to infer that O'Brien wasn't actually reaching for a gun, but was instead trying to gain leverage to prevent his arrest or aiming to protect himself by leaning towards the center of his car. *See* [90] ¶¶ 32–34; [93] Ex. F at 3:00–4:30. But an officer in defendants' position would have seen O'Brien actively resisting arrest and moving his right hand out of sight, suggesting potential threats to the officers or others. *See* [93] Ex. F at 3:00–4:30; *Williams*, 809 F.3d at 944 (an arrestee who got out of a vehicle

10

during a traffic stop, resisted an officer's attempt to conduct a search, and refused other commands posed a threat to an officer who was away from his car); *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007) (citations omitted) (noting that a suspect who may have a weapon poses a danger of serious bodily harm, justifying the use of potentially deadly force).

Police officers are permitted to point their weapons at someone who presents a risk of harm to others. *See Johnson v. Gullickson*, No. 22-1016, 2022 WL 2387350, at *2 (7th Cir. July 1, 2022) (quoting *Baird v. Renbarger*, 576 F.3d 340, 344, 346–47 (7th Cir. 2009)). No jury could find that these officers didn't reasonably suspect that O'Brien posed a risk by reaching his hand out of view while resisting arrest. It was dark at the time of the arrest, the officers were on foot in the road, they kept their weapons out for a minute only, and neither their verbal threats nor their pointing weapons at O'Brien violated his Fourth Amendment rights. *See Williams v. City of Champaign*, 524 F.3d 826, 828 (7th Cir. 2008); *Henning*, 477 F.3d at 496. *Cf. Baird*, 576 F.3d at 343–47.

O'Brien's second theory of excessive force also fails. Plaintiff repeatedly refused to comply with the officers' requests that he move his car, hand over his papers, and exit the vehicle. *See* [90] ¶¶ 15–25. He physically resisted defendants' efforts to remove or handcuff him by holding on to the steering wheel of his car. *See id.* ¶¶ 26–30. Davis and Brown, trying to handcuff O'Brien, twisted his arm and pulled on his hands, breaking his thumb. *See id.* ¶¶ 23–30, 68–69. Officers eventually secured O'Brien's hands, and physically removed him from the car through the passenger

11

door. *See id.* ¶¶ 42–48. Even at this point, however, O'Brien continued to resist, and Officer Shrake threatened to tase him unless he complied. *See id.* ¶¶ 51–52.

Officers are permitted to order a person suspected of violating the law out of a vehicle, and to forcibly remove those who resist and pose a threat to public safety. *See Padula v. Leimbach*, 656 F.3d 595, 603 (7th Cir. 2011); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 843 (7th Cir. 2004).[4] Here, these officers acted reasonably by trying to secure a resisting suspect's hands, and, when O'Brien continued to refuse their orders, removing him from a car. By blocking traffic and resisting arrest, O'Brien posed a potential threat to the officers and others, and it was reasonable for defendants to forcibly secure his hands, remove him from a car, and use threats to bring O'Brien under control. *See Padula*, 656 F.3d at 603 (forcibly removing a driver from a car and using pepper spray weren't excessive force when the driver refused to comply with a command to exit a vehicle and physically struggled with officers). *Cf. Alicea v. Thomas*, 815 F.3d 283, 290–91 (7th Cir. 2016) (finding that an officer could have used excessive force by beating a plaintiff who didn't present a threat or resist arrest in any way). O'Brien argues that the officers could have used less force by removing him through the driver's side door (rather than the passenger side). *See* [97] at 16. But there's no evidence that moving O'Brien through a different door would have been less forceful than the removal the officers performed, or that the driver's

---

[4] O'Brien's physical resistance to the officers' attempts to arrest him means that he did more than merely obstruct them through argument. *Cf. People v. Raby*, 40 Ill.2d 392, 399 (1968).

12

side was a practical alternative given the location of the steering wheel and O'Brien's method of resistance. No jury could find that defendants acted unreasonably.

Brown, Davis, and Shrake needed to make split-second judgments in a tense and evolving situation. *See Williams v. Indiana State Police Dep't*, 797 F.3d 468, 473 (7th Cir. 2015) (citation omitted). Their choices were reasonable in this case, and no jury could find that defendants violated O'Brien's Fourth Amendment rights.[5]

### C.   Qualified Immunity

Plaintiff's federal claims also fail on qualified-immunity grounds. Qualified immunity protects police officers from civil liability with the exception of "the plainly incompetent or those who knowingly violate the law." *Lovett v. Herbert*, 907 F.3d 986, 991 (7th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Once qualified immunity is raised, the plaintiff must show (1) a violation of a constitutional right

---

[5] In addition to his claims for excessive force and false arrest, O'Brien also sued defendants under § 1983 for malicious prosecution and retaliation. *See* [8] ¶¶ 90–119. Defendants moved for summary judgment on all of plaintiff's claims, but O'Brien failed to respond and waived argument as to these claims. *See* [97] at 13–17; *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) (citing *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999)). Because the officers had probable cause to arrest O'Brien, his malicious prosecution claim cannot succeed. *See Thompson v. Clark*, 142 S.Ct. 1332, 1337–38 (2022) ("[T]he gravamen of the Fourth Amendment claim for malicious prosecution ... is the wrongful initiation of charges without probable cause."); *Beaman v. Freesmeyer*, 2019 IL 122654 ¶¶ 23, 26 (citations omitted) (noting that, under Illinois law, the absence of probable cause is an element for a malicious prosecution claim). As far as O'Brien's retaliation claim is based on his arrest, probable cause also bars recovery under the First Amendment. *See Nieves v. Bartlett*, 139 S.Ct. 1715, 1724 (2019) (citation omitted) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."). Because there's no evidence that defendants used force against O'Brien based on retaliatory animus, plaintiff's other retaliation theory also fails. *See Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (noting that a plaintiff proves retaliation by showing that "the First Amendment activity was at least a motivating factor in the decision" to deprive the plaintiff of his rights). Summary judgment is granted to defendants as to Counts Five and Six.

and (2) that the constitutional right was clearly established at the time of the alleged violation. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017)). To show that a right was clearly established, a plaintiff can (1) identify a reasonably analogous case that articulates the right at issue and concerns a similar set of facts, or (2) demonstrate that the violation was so obvious that a reasonable person would necessarily have recognized that it violated the law. *Id.* at 701–02 (quoting *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017)); *Est. of Escobedo v. Bender*, 600 F.3d 770, 779–80 (7th Cir. 2010) (citations omitted).

By failing to respond to defendants' arguments, O'Brien waived argument that the officers aren't entitled to qualified immunity on his false arrest claim. *See* [97] at 17–20; *Ennin v. CNH Industrial America, LLC*, 878 F.3d 590, 595 (7th Cir. 2017) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). Brown, Davis, and Shrake are entitled to qualified immunity on that claim because the undisputed facts show that they had probable cause to arrest O'Brien. *See* [90] ¶¶ 16–20; *Farnik v. City of Chicago*, 1 F.4th 535, 545 (7th Cir. 2021) (quoting *Muhammad v. Pearson*, 900 F.3d 898, 907 (7th Cir. 2018)).

As for excessive force, O'Brien points to two cases that he says should have alerted defendants that they were violating his rights: *Abbott v. Sangamon Cnty., Illinois*, 705 F.3d 706 (7th Cir. 2013) and *Payne v. Pauley*, 337 F.3d 767 (7th Cir.

14

2003). *See* [97] at 18.[6] But neither *Abbott* nor *Payne* involved similar facts to those presented here. In *Abbott*, the court held that it was excessive force "to deploy a taser in dart mode against a nonviolent misdemeanant who had just been tased in dart mode and made no movement, when, after the first tasing, the officer instructed her to turn over." *Abbott*, 705 F.3d at 732. And in *Payne*, officers could have violated a suspect's rights when they ran into her body, fought over arm for thirty minutes, and overtightened her handcuffs, even though she posed no danger, didn't resist arrest, and was suspected of only a very minor, non-violent crime. *See Payne*, 337 F.3d at 779–81.

The facts here are different because O'Brien was physically resisting officers' attempts to arrest him. *See* [90] ¶¶ 26–28. Plaintiff hasn't identified any cases—and the court cannot find any—that clearly established that officers use excessive force by physically securing the hands of a resisting suspect, removing that person from a car, or pointing weapons at a person who presents a potential threat. As discussed above, these uses of force aren't excessive. *See, e.g.*, *Johnson v. Gullickson*, No. 22-1016, 2022 WL 2387350, at *2 (7th Cir. July 1, 2022) (quoting *Baird v. Renbarger*, 576 F.3d 340, 344, 346–47 (7th Cir. 2009)); *Padula v. Leimbach*, 656 F.3d 595, 603 (7th Cir. 2011). Plaintiff hasn't shown that defendants violated his clearly established rights by using excessive force.

---

[6] O'Brien also argues that the issue of qualified immunity cannot be decided now, because there are disputes of material fact. *See* [97] at 18. But plaintiff doesn't identify which facts are disputed, and, as discussed above, the essential facts about what happened are clear, such that qualified immunity can be decided now.

Summary judgment is granted to defendants as to plaintiff's claims for false arrest and excessive force.

### D. Other State-Law Claims

Under Illinois law, O'Brien also sued defendants for assault and battery, and sought to recover through indemnification and a respondeat superior theory of liability. *See* [8] ¶¶ 76–89, 120–31. Ordinarily, with all federal claims dismissed, a district court should relinquish supplemental jurisdiction over state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Hansen v. Bd. of Trustees Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) (citations omitted). But dismissal isn't required, and a court can decide state-law claims based on considerations of judicial economy, convenience, and fairness. *See Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 461 (7th Cir. 2020) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).

In this case, it makes sense to retain jurisdiction over O'Brien's state-law claims. The court and the parties have expended substantial resources: litigation began more than three years ago, and the parties have completed discovery. *See* [1]; [78]. Plaintiff's assault and battery claims are intertwined with the federal claims, because they are based on the same facts and conduct. *See* [8] ¶¶ 83–89, 120–31. And it's clear how each of O'Brien's state-law claims must be decided. *See Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 920–21 (7th Cir. 2015); *Wright*, 29 F.3d at 1251.

O'Brien's assault and battery claims are barred by the Illinois Tort Immunity Act. *See* 745 ILCS 10/2-202. Under the Act, police officers can only be held liable for action which shows an actual or deliberate intention to cause harm, or when they are

16

utterly indifferent to or consciously disregard the safety of others. *See Wilson v. City of Chicago*, 758 F.3d 875, 881 (7th Cir. 2014) (quoting 745 ILCS 10/1-210); *McDowell v. Vill. of Lansing*, 763 F.3d 762, 768 (7th Cir. 2014) (quoting *Geimer v. Chicago Park Dist.*, 272 Ill.App.3d 629 (1st Dist. 1995)). Actions that are objectively reasonable cannot be willful and wanton. *See Horton v. Pobjecky*, 883 F.3d 941, 954 (7th Cir. 2018); *Kapernekas v. Vill. of Stone Park*, No. 17 C 6040, 2019 WL 1543261, at *6 (N.D. Ill. Apr. 9, 2019) (gathering cases). As discussed above, defendants' conduct in arresting O'Brien—including pointing their weapons at him and pulling him forcibly from the car—was objectively reasonable. O'Brien's claims for assault and battery are based on that conduct. *See* [8] ¶¶ 120–31. Plaintiff can't show that the officers acted in a willful or wanton way, which means they are immune from the assault and battery claims.

Recovery based on respondeat superior and indemnification depends entirely on O'Brien's other claims. *See Young v. City of Chicago*, 987 F.3d 641, 646 (7th Cir. 2021); *Moran v. Calumet City*, 54 F.4th 483, 500 (7th Cir. 2022) (citing *Beaman v. Freesmeyer*, 451 Ill.Dec. 310 (2021)). Because O'Brien can't show that any individual defendant is liable, he cannot recover under respondeat superior or indemnification theories, either.

Summary judgment is granted to defendants as to the state-law claims.

## IV. Conclusion

Defendants' motion for summary judgment, [89], is granted. Enter judgment and terminate civil case.

ENTER:

                                                                                                      Manish S. Shah
                                                                                                       United States District Judge

Date: June 12, 2023